UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                          Case No. 23-32432 KLT

Todd David Sczepanski and Marri Janel Sczepanski,

    Debtors.                                                              Chapter 7

MEMORANDUM DECISION AND ORDER

    This matter came before the Court on a Motion to Dismiss a Chapter 7 Case for Abuse (the "Motion") filed by the Acting United States Trustee for Region 12 (the "UST"). [ECF No. 15]. The UST submitted a declaration in support of the Motion (the "UST Decl."). [ECF No. 15-1]. Debtors filed an objection (the "Objection"). [ECF No. 20]. Debtor Todd Sczepanski filed a declaration in support of the Objection (the "Debtors' Decl."). [ECF No. 20-1]. The court held a hearing (the "Hearing"), and appearances were noted on the record. The "Means Test" confirms Debtors have sufficient income to fund a chapter 13 plan. The Motion is thus granted, and Debtors' chapter 7 case is dismissed.

JURISDICTION

    A contested matter to determine chapter 7 eligibility is a "core" proceeding. 28 U.S.C. § 157(b)(2). The court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicate for the Motion is 11 U.S.C. § 707(b). Applicable rules include Fed. R. Bankr. P. 1017(e), 2002(a)(4), and 9014 and Local R. 1015-1, 9013-1, and 9013-2. This decision is based on all information available to the court and constitutes its

findings of fact and conclusions of law under Fed. R. Bankr. P. 7052, made applicable to this contested matter by Rule 9014(c).

## BACKGROUND

Todd D. Sczepanski ("Todd") and Marri J. Sczepanski ("Marri") filed a joint chapter 7 petition (the "Petition") on November 13, 2023. [ECF No. 1]. Debtors' primary asset is their homestead, which is encumbered by two mortgages totaling $182,953 (the "Mortgages") and three federal tax liens totaling $78,278 (the "Tax Liens"). [Id. at Sched. A/B, D]. Todd works in a salaried, year-round position; Marri works for a school district and supplements her income during school breaks by selling books. [Debtors' Decl., at ¶8]. They have primarily "consumer debts," as such term is defined in § 101(8), including nonpriority unsecured claims in the amount of $38,679. [ECF No. 1, at p. 7]. They live together with one child. [Id. at Sched. J].

Debtors are "above-median filers." Their current monthly income is $10,252.54 per month, or $123,030.48 per year, for their household of three people. [ECF No. 1, at pp. 62-64]. To determine whether they were eligible for a chapter 7 case, they completed the means test on Form 122A-2 (the "Means Test"). [Id. at pp. 65-74] Debtors deducted expenses totaling $10,231.59 per month, resulting in disposable income of $20.95 per month. [Id.]. After the Motion was filed, Debtors amended their Means Test. [Compare ECF No. 1, at pp. 65-74, with ECF No. 21, at pp. 18-27]. The net effect of the amendment increased their disposable income to $41.25 per month. [ECF No. 21 at p. 25]. Based on this calculation, Debtors argue they are eligible to remain in chapter 7 and the "Presumption of Abuse" does not apply to them. [Id.].

2

The UST disputes their calculation and argues Debtors' disposable income is significantly higher than $41.25 per month. The UST identified at least four errors with their Means Test, but the Motion turns on whether they improperly deducted $1,587 per month on account of the Tax Liens. [UST Decl., at ¶ 10]. If this deduction is removed from their Means Test, the UST argues their case must be dismissed for abuse pursuant to § 707(b)(1). [ECF No. 15].

The court agrees Debtors are not eligible to remain in chapter 7. When properly calculated, the Means Test confirms the "Presumption of Abuse" arises in their case. Debtors did not assert special circumstances to rebut the Presumption of Abuse. [ECF No. 1, at p. 73]. With Debtors' consent, the court could have converted their case to chapter 13 pursuant to § 707(b)(1). At the Hearing, however, Debtors' counsel confirmed their preference for dismissal. Accordingly, the Code requires the bankruptcy court to dismiss this case.

## DISCUSSION

Under § 707(b)(1), the court may dismiss, or convert with Debtors' consent, if granting relief in this case would be "an abuse of the provisions" of chapter 7. For above-median income filers, like Debtors in this case, § 707(b)(2)(A)(i) requires the court to "presume abuse exists" if Debtors' net monthly income exceeds a statutory threshold (the "Presumption of Abuse"). 11 U.S.C. § 707(b)(7). As a practical matter, the Presumption of Abuse arises if Debtors' current monthly income ("CMI") minus the living expenses specified in § 707(b)(2)(A)(ii-iv) (collectively, "Expenses") results in a net amount greater than $252.50 per month. For the Means Test in this case, the

3

UST accepted Debtors' calculation of CMI and nearly all their Expenses, but the UST did not subtract $1,587 per month from CMI on account of the Tax Liens. If this amount is added back to CMI, Debtors' disposable income for the purpose of funding a chapter 13 plan, far exceeds the statutory threshold and triggers the Presumption of Abuse. [1]

Debtors assert the "plain language" of Section 707(b)(2)(A)(iii) supports their position that the Tax Liens should be factored into their Means Test. If applicable, this Section would permit Debtors to reduce their CMI by the following amount:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

Unfortunately, Debtors' "plain language" theory is far from obvious. First, there is no evidence in the record that payments are "contractually due" to the IRS for a 60-month period. § 707(b)(2)(A)(iii)(I). By definition, the Tax Liens are not contractual obligations. They are involuntary liens that automatically attach, by operation of law, to any property owned by a delinquent taxpayer. 26 U.S.C. § 6321.

---

[1] The UST states that Debtors' disposable income is $2,454 per month under § 707(b)(2), or $1,718.66 per month under § 707(b)(3). [UST Decl., at ¶¶ 9, 11.]

4

Next, Debtors attempt to shoehorn the Tax Liens into subparagraph II by claiming they must pay $1,587 per month "in order to preserve homeownership." [Objection, at p. 1]. This is not a plain language argument. Debtors are really arguing Subparagraph II applies because their Tax Liens are functionally equivalent to defaulted mortgage payments. It is true that the homestead is collateral for both the Mortgages and Tax Liens, but the analogy quickly breaks down. If Debtors had $78,000 in past due payments on their Mortgages, the lenders would foreclose. But Debtors have offered no evidence that they must make "additional payments" to the IRS to "maintain possession" of the homestead. In making this comparison, Debtors seem to conflate a tax lien and a tax levy. <u>Cf</u>. 26 U.S.C. § 6331. The Tax Liens only demonstrate that the IRS has a statutory entitlement to sale proceeds, after satisfaction of both Mortgages, if Debtors voluntarily sell the homestead. There is no evidence of a levy, or any other reason to believe that an involuntary sale of the homestead is imminent.

Debtors insist that these hypothetical secured payments should be included in their Means Test, even if they provide no evidence of a long-term payment agreement. This is precisely the reasoning that was rejected by the majority in <u>Ransom v. FIA Card Servs., N.A., 562 U.S. 61 (2011)</u>. Like <u>Ransom</u>, Debtors should not be permitted to factor an expense into the Means Test if they do not actually pay such expense on a monthly basis. The Tax Liens have no bearing on their monthly disposable income. Their inclusion in Debtors' calculation would misinform the court's assessment of their ability to fund a chapter 13 plan. Debtors' interpretation of Section 707(b) is

5

unsupported by the actual text of the Code, and equally important, their interpretation undermines the statutory purpose of the Means Test in bankruptcy.

Once the Tax Liens are removed from Debtors' Means Test, the Presumption of Abuse clearly arises in their case. Debtors can only rebut the Presumption "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces." § 707(b)(2)(B)(i). Debtors have not attempted to rebut the Presumption of Abuse; they have argued exclusively that it does not arise in their case. Debtors are thus ineligible to remain in a chapter 7 bankruptcy case. Additionally, Debtors have not consented to conversion of their case to chapter 13. Accordingly, **IT IS ORDERED**: The Motion is **GRANTED** and Debtors' case is **DISMISSED**.

DATED: *April 12, 2024*                                         */e/Kesha L. Tanabe*
                                                                _____
                                                                Kesha L. Tanabe
                                                                United States Bankruptcy Judge